UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---

MIDAS INTERNATIONAL CORPORATION

Plaintiff,

-vs-

ANTONELLI HOLDING COMPANY, CHRISTOPHER ANTONELLI AND CYNTHIA ANTONELLI,

Defendants.

---

CA 05 504

C.A. No. 05-

**VERIFIED COMPLAINT**

Midas International Corporation ("Midas"), by and through its attorneys, as and for its Complaint against Defendants alleges as follows:

1. This is an action for breach of contract, trademark infringement and unfair competition arising under the Trademark Act of 1946 as amended, 15 USC §§ 1051 et. seq. and state law.

2. Plaintiff seeks entry against Defendants Antonelli Holding Company, Christopher Antonelli and Cynthia Antonelli (collectively hereinafter referred to as "Defendants"), of a preliminary and permanent injunction, damages, attorneys' fees, costs and such other relief as the Court deems appropriate and just.

**THE PARTIES**

3. Midas is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business in Itasca, Illinois.

4. Upon information and belief, Defendant Antonelli Holding Company is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in East Greenwich, Rhode Island.

5. Upon information and belief, Defendants Christopher and Cynthia Antonelli are citizens and residents of the State of Rhode Island.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the parties and of the subject matter pursuant to 15 U.S.C. §§ 1116(a) and 1121; 28 U.S.C. §§ 1331, 1332, 1338 and 1367(a). The matter in controversy, exclusive of interests and costs, exceeds the sum of $75,000, arises under the laws of the United States and is between citizens of different states.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**BACKGROUND**

8. Midas is engaged in the business of operating and licensing the operation by others under franchise agreements of automotive specialty shops known as "Midas Shops." These shops engage in the sale and installation of a variety of automotive products. Midas makes available to its franchisees products which are offered, sold and installed and which carry a unique and valuable guarantee to the consumer public. Midas also provides materials and information to assist its franchisees in the operation of their respective franchise operations. Together, the services and material provided to Midas' franchisees are known as the "Midas System."

9. Midas has adopted as a trademark and is using the word "Midas" to distinguish its shops, products, supplies and services from the products, supplies and services of others.

10. Midas owns numerous federal registrations for the mark "Midas" and related marks. Among those registrations are Registration Nos. 655,353, 657,036, 661,021 and 803,614. Each of these registrations is in full force and effect and is incontestable pursuant to 15 U.S.C. § 1065. Copies of the registrations are attached hereto as Exhibit "A."

11. There are Midas automotive repair shops throughout Rhode Island and the United States. As a result of Midas' expenditure of vast amounts of money in advertising and marketing, Midas has earned enormous commercial success and favorable recognition and acceptance. In connection with all such activities, Midas has employed and continues to employ its trademarks to identify its services, products and business and has distinguished itself from the products and business of others.

12. The Midas trademarks are distinctive and famous and have acquired secondary meaning as a designation of Midas as a quality provider of automotive maintenance and repair services.

13. The Midas trademarks are utilized in interstate commerce.

14. The Midas trademarks are recognized throughout the United States and Midas spends tens of millions of dollars every year promoting, advertising and maintaining its trademarks.

15. The Midas trademarks and the goodwill of the business associated with that name are of inestimable value. By continuing the acts as hereinafter complained of, Defendants have infringed Midas' trademarks and have deliberately traded upon Midas' goodwill and reputation resulting in irreparable injury to Midas and confusion in the market for its products and services.

**THE FRANCHISE AGREEMENT**

16. Defendant Antonelli Holding Company is a former franchisee of Midas that maintains an automotive service and repair shop at 5601 Post Road, East Greenwich, Rhode Island (the "Shop" or the "Premises").

17. Antonelli Holding Company is the Assignee of a Midas Franchise and Trademark Agreement, dated September 3, 1992 for the Shop (the "Franchise Agreement") between Midas and Gibbons Holding Enterprises, Inc. A true and correct copy of the Franchise Agreement is attached hereto as Exhibit "B," and a true and correct copy of the Assignment of Midas Franchise and Trademark Agreement ("Assignment Agreement") is attached hereto as Exhibit "C."

18. By virtue of the Assignment Agreement, Antonelli Holding Company accepted the assignment and assumed and covenanted to perform and keep all duties and obligations of the franchisee under the Franchise Agreement.

19. By virtue of the Assignment Agreement, Antonelli Holding Company obtained, among other things, the right to use and display trademarks proprietary to Midas and to represent that its shop is a "Midas" shop.

20. Defendants Christopher and Cynthia Antonelli also agreed that they would be personally bound by all the terms and provisions of the Franchise Agreement, other than those requiring the payment of money by Franchisee, to the same extent and in the same manner as the Franchisee is bound.

21. The Midas trademark symbols and signage are an integral part of Midas' franchise operations and are designed and intended to be distinctive and to identify and set apart Midas shops from those of its competitors. Specifically, in addition to the name "Midas," Midas

has adopted a distinctive oval and other signage and indicia. Every Midas shop in the United States has, or is supposed to have, these particular distinctive external characteristics.

22. In exchange for the right to use Midas' proprietary marks, symbols and indicia, franchisees must pay to Midas monthly royalties and provide Midas with monthly and yearly net revenue statements. Failure to make payments and provide Midas with truthful and accurate net revenue statements are grounds for termination of the Franchise Agreement.

23. The license to use and display Midas proprietary marks and indicia is limited. Pursuant to Sections 1.1 and 1.3 of the Franchise Agreement, Midas granted Defendants a non-exclusive 20-year license, expiring on September 2, 2012, for the operation of a Midas shop using Midas proprietary marks and indicia (as those terms are defined in the Franchise Agreement).

24. Pursuant to Section 2.1 of the Franchise Agreement, Defendants acknowledged the validity of Midas' proprietary marks and that those marks are "the sole property of Midas" and that they would "use the Proprietary Marks only for so long as the right, franchise, and license" granted by the Franchise Agreement "remains in force." Additionally, Defendants acknowledged that Midas was the sole owner of all proprietary rights in and to the Midas System. Franchise Agreement at Section 2.4.

25. Section 4.1 of the Franchise Agreement obligates Defendants to pay royalties to Midas within ten days after the close of each calendar month.

26. Section 4.2 of the Franchise Agreement requires Defendants to submit monthly net revenue statements and yearly net revenue statements.

27. Pursuant to Section 6.5 of the Franchise Agreement, Defendants acknowledged that the design and appearance of both the exterior and the interior of the Midas shop were part of the Midas indicia.

28. Section 8.2 of the Franchise Agreement directs that if Defendants fail to make any payment of money owed to Midas or fails to submit to Midas any report required by Sections 4.2 or 6.10 of the Franchise Agreement and if such default is not totally cured within thirty (30) days after Midas gives written notice of such default, then Midas may terminate the agreement at any time via written notice of such termination.

29. Section 8.7 of the Franchise Agreement states that upon termination a franchisee has certain termination obligations ("Termination Obligations"). Termination Obligations include the following:

> (a) Promptly cause [Defendants] to pay Midas all liquidated or ascertainable sums owing from [Defendants] to Midas, without set-off or other diminution on account of unliquidated claims.
>
> (b) Immediately and permanently discontinue the use of any of the Proprietary Marks, any of the Midas indicia, or the Midas System, or any marks, names or indicia which in the opinion of Midas are confusingly similar thereto, or any other materials which may in any way indicate or tend to indicate that [Defendants] are or were an authorized Midas franchisee or is or was in any way associated with Midas.
>
> (c) Immediately and permanently remove, destroy, or obliterate, at [Defendants'] expense, all signs containing any of the marks, names, indicia, or other things the use of which is prohibited by paragraph (b) above. . . .
>
> (d) Promptly destroy or surrender to Midas all stationery, letterheads, forms, printed matter, promotional displays, and advertising containing any of the marks, names, indicia, or other things the use of which is prohibited by paragraph (b) above.
>
> (e) Immediately and permanently discontinue all advertising placed by [Defendants] as an authorized Midas franchisee or which contains or makes reference to any of the marks, names, indicia, or other things the

use of which is prohibited by paragraph (b) above, and will cancel all such advertising already placed or contracted for which would otherwise be published, broadcast, displayed, or disseminated after the date of termination hereof.

(f) Immediately cease using or claiming any right to use any telephone number which Midas, as the subscriber therefor, has allowed [Defendants] to use during the term of this Agreement, and pay all bills incurred for the period during which [Defendants] used such number or numbers. . . .

(g) Immediately and permanently discontinue any use of the word "Midas" or any word confusingly similar thereto in [Defendants'] firm name, corporate name, or trade name . . . .

(h) Sell to Midas, f.o.b. [Defendants'] shop, all or such part of inventories of genuine Midas products on hand as of the date of termination as Midas may request in writing prior to or within 30 days after the date of termination (and will surrender all Midas guarantee certificates in [Defendants'] possession or control) . . . Midas shall have the right to set off and apply any amounts due to [Defendants] pursuant to this paragraph (h) against any and all other amounts which may be due from [Defendants] to Midas.

(i) … refrain from doing anything tending to indicate that [Defendants] [are] or [were] an authorized Midas franchisee, or is or was in any way associated with Midas.

30. The purpose of the Termination Obligations is, among other things, to protect the value of Midas' proprietary marks and indicia, protect proprietary information, reduce customer confusion upon the termination of a franchise and assist in the transition to a new franchisee and/or direct Midas customers to an authorized Midas franchisee.

31. Defendants also agreed that it would be difficult to ascertain the exact amount of damages incurred by Midas in the event of any breach or default by Defendants and that, therefore, the liquidated sum of $100 would be assessed against Defendants, jointly and severally, for each day that Defendants were in breach of, among other things, their Termination Obligations. Franchise Agreement at Section 8.6.

32. Section 10.4 of the Franchise Agreement directs that Midas may recover

from Defendants all attorneys' fees and costs incurred by Midas in connection with enforcing Midas' rights against Defendants.

33. Defendants Christopher and Cynthia Antonelli also executed a Personal Guaranty whereby they agreed to be liable to Midas for any and all amounts due and owing to Midas (the "Personal Guaranty"). A true and correct copy of the Personal Guaranty is attached hereto as Exhibit "D."

34. The Personal Guaranty provides that "Guarantor, for value received, hereby unconditionally Guarantees to Midas the prompt payment in full when due or declared due and at all times thereafter of any and all indebtedness, liability or liabilities, primary, secondary or contingent, of any and every kind or nature, now or thereafter owing or to becoming owing by" Antonelli Holding Company to Midas.

35. The Personal Guaranty provides that the Guarantors are liable for the full, prompt and faithful performance of all obligations of Antonelli Holding Company under any agreements between Midas and Antonelli Holding Company, including without limitation the Franchise Agreement.

36. The Personal Guaranty also provides that Antonelli Holding Company is jointly and severally liable with the Guarantors for any indebtedness, that Midas need not proceed against Antonelli Holding Company before calling on the Guarantors for payment, and that recovery against the Guarantors may occur in the same or separate actions brought to recover the principle indebtedness.

37. The Personal Guaranty also provides that demand, presentment for payment, protest, notice of a non-payment, or protest of any notes pledged hereunder is waived by the Guarantors, and that Midas may recover from Defendants all expenses, collection charges,

court costs and attorneys' fees incurred by Midas in connection with enforcing Midas' rights against the Guarantors.

**TERMINATION OF THE FRANCHISE AGREEMENT**

38. By Notice of Defaults dated September 15, 2005, sent by U.S. Express Mail, Midas notified Defendants that they had failed to pay royalties due to Midas for the month of July 2005 and had a trade account that was past due ("Franchise Agreement Notice of Defaults"). A true and correct copy of the Franchise Agreement Notice of Defaults is attached hereto as Exhibit "E."

39. As of September 15, 2005, Defendants owed a total of $5,091.20 in unpaid royalties, including interest, and a total of $62,913.54 in defendants' trade account, including interest.

40. In accordance with the Franchise Agreement, Midas gave Defendants thirty (30) days to cure their various breaches.

41. After Defendants had failed to cure any of the defaults set forth in the Franchise Agreement Notice of Defaults, in a hand-delivered letter dated October 18, 2005, Midas terminated the Franchise Agreement (the "Termination Notice"). In doing so, Midas directed Defendants' attention to Section 8.7 of the Franchise Agreement that set forth Defendants' Termination Obligations. A true and correct copy of the Termination Notice is attached hereto as Exhibit "F."

42. As of November 30, 2005, Defendants continue to use and display Midas' proprietary trademark and continue to trade under the Midas name.

43. Notwithstanding the termination of the Defendants' Franchise, Defendants continue to hold themselves out to the public as being a Midas franchise. On November 1, 2005,

the photograph attached as Exhibit "G" was taken at Defendants' Shop. The photograph shows that there were at least two prominent exterior Midas trademarked and proprietary signs displayed. Specifically, there was an exterior pole sign with a "Midas" sign affixed to the top, a "Midas" sign affixed to the exterior of the former Midas shop as well as exterior markings that was identical in all respects to the Shop's appearance prior to termination of Defendants' franchise. In short, Defendants' post-franchise termination exterior is the same as its exterior when it was an authorized Midas franchise. Similarly, the inside of the Shop continued to include the same numerous trademark and proprietary Midas signs that were present prior to termination of the Franchise. As such, a customer seeking a Midas shop would be likely to mistakenly conclude, based on the signage and store appearance, that the Shop located at 5601 Post Road, East Greenwich, Rhode Island is a Midas franchise.

44. Upon information and belief, Defendants will not discontinue their use of Midas' proprietary marks until ordered to do so by this Court.

45. Defendants continue to maintain a listing in the telephone directory identifying the Shop as being a Midas Franchise. The directory lists Midas as having the number (401) 885-5115.

46. As part of its obligations to its franchisees, Midas provided to Defendants proprietary written materials and documents that Defendants, upon information and belief, have used and continue to use for their benefit.

47. Upon information and belief, Defendants are using Midas' proprietary software, R.O. Writer, and related documentation for use with the former Midas franchise business and with their other business, Mid-State Tire, in contravention of the License between

Midas and Antonelli Holding Company governing the use of such software. A true and correct copy of the License is attached hereto as Exhibit "H."

48. As Defendants are no longer Midas franchisees, Midas can no longer monitor and enforce Midas' performance, workmanship and store appearance standards. As such, in the event a customer complains about the service provided at Defendants' former Midas shop, Midas cannot compel Defendants to comply with their obligations under the Franchise Agreement. Moreover, it is difficult to explain to a customer who has received poor service that the shop which looks like a "Midas" is, in fact, not a Midas. Under such circumstances, the consuming public could come to believe that not all "Midas" shops are genuine Midas shops. Such a belief among the consuming public would be disastrous to Midas' reputation and business and the business and reputation of its authorized franchisees.

49. Defendants have no affiliation with Midas and are not authorized to display or use the Midas trademark or to represent that they are in any way affiliated with Midas. Defendants have undertaken their wrongful and fraudulent activities with the intent to deceive, mislead and confuse the public and purchasers and consumers of Midas' products and services within Rhode Island and elsewhere in the United States. The use, imitation and copying of Midas' trademarks by Defendants on their store and the use of Midas' trademarks by Defendants in the operation of Defendants' store have caused, are causing and will continue to cause confusion to, or mistake by, or deception of customers as to the nature of Defendants' store and as to the existence of an affiliation of imprimatur between Midas and the Defendants, all to the irreparable damage of Midas.

50. Plaintiff has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**Breach of the Franchise Agreement**

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if set forth fully hereinafter.

52. The failure of Defendants to pay royalties and the balance on their Midas trade account due and owing to Midas constitutes breaches of contractual obligations undertaken by Defendants in the Franchise Agreement and constitutes just and lawful grounds for the termination by Midas of the Franchise Agreement.

53. The failure of Defendants to comply with their Termination Obligations under the Franchise Agreement is a breach of their duties and obligations under the Franchise Agreement.

54. Defendants' conduct, has caused, is causing and will continue to cause irreparable damage to Midas unless restrained by this Court.

55. As of November 29, 2005, Defendants owe a total of $14,746.68 in unpaid royalties, including interest, and a total of $63,693.76 in defendants' trade account, including interest.

**SECOND CLAIM FOR RELIEF**
**Breach of the Personal Guaranty**

56. Plaintiff repeats and realleges paragraphs 1 through 55 as if set forth fully hereinafter.

57. The failure of Defendants Christopher and Cynthia Antonelli to pay royalties and the balance on the Midas trade account due and owing to Midas constitutes breaches of contractual obligations undertaken by these Defendants in the Personal Guaranty and constitutes just and lawful grounds for the termination by Midas of the Franchise Agreement.

58. The failure of Defendants Christopher and Cynthia Antonelli to comply with their Termination Obligations under the Franchise Agreement is a breach of their duties and obligations under the Personal Guaranty and the Franchise Agreement.

59. As of November 29, 2005, Defendants owe a total of $14,746.68 in unpaid royalties, including interest, and a total of $63,693.76 in defendants' trade account, including interest.

**THIRD CLAIM FOR RELIEF**
**Federal Trademark Infringement**

60. Plaintiff repeats and realleges paragraphs 1 through 59 as if set forth fully hereinafter.

61. The use in commerce by Defendants of the Midas trademarks and trade name after the termination of the Franchise Agreement and without the consent of Midas is likely to confuse or deceive, and has confused or deceived, the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Midas. Such continued use of the Midas trademarks and tradename infringes on Midas' exclusive rights in Midas' trademarks under section 32 of the Lanham Act, 15 U.S.C. § 1114.

62. Defendants' acts were, and are being, done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

63. Defendants' conduct has caused, is causing and will continue to cause irreparable damage to Midas unless restrained by this Court.

64. Midas has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Federal Trade Dress Infringement**

65. Plaintiff repeats and realleges paragraphs 1 through 64 as if set forth fully hereinafter.

66. Defendants' automotive repair shop is identified by signs, exterior appearance, and other items on which the words "Midas" appear in the same lettering style and in the same distinctive manner as Midas uses for shops operated by genuine and authorized Midas Franchisee.

67. Midas' trade dress is used in commerce, non-functional and distinctive.

68. Defendants' use of the trade dress that is identical or confusingly similar to Midas' trade dress constitutes a false designation of the origin of the Defendants' shop, which is likely to cause confusion, and has caused confusion and deception among the public as to the affiliation, connection or association of the Defendants' Shop with the shops operated by genuine Midas licensees. Such adoption of Midas' trade dress violates section 43 of the Lanham Act, 15 U.S.C. § 1125.

69. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70. Defendants' conduct has caused, is causing and will continue to cause irreparable damage to Midas unless restrained by this Court.

71. Midas has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**Common Law Trademark Infringement**

72. Plaintiff repeats and realleges paragraphs 1 through 71 as if set forth fully hereinafter.

73. The use in commerce by Defendants of the Midas trademarks and trade name after the termination of the Franchise Agreement and without the consent of Midas is likely to confuse or deceive, and has confused or deceived, the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Midas. Such continued use of the Midas trademarks and tradename infringes on Midas' exclusive rights in Midas trademarks as established under the common law.

74. Defendants' acts were, and are being, done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

75. Defendants' conduct has caused, is causing and will continue to cause irreparable damage to Midas unless restrained by this Court.

76. Midas has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Federal Unfair Competition**

77. Plaintiff repeats and realleges paragraphs 1 through 76 as if set forth fully hereinafter.

78. The use in commerce by Defendants of the Midas trademarks and trade name after the termination of the Franchise Agreement and without the consent of Midas is likely to confuse or deceive, and has confused or deceived, the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Midas. Such continued use of the Midas trademarks and tradename infringes on Midas' exclusive rights in Midas' trademarks under section 32 of the Lanham Act, 15 U.S.C. § 1125(a).

79. Defendants' acts were, and are being, done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

80. Defendants' conduct has caused, is causing and will continue to cause irreparable damage to Midas unless restrained by this Court.

81. Midas has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**
**Rhode Island Unfair Competition**

82. Plaintiff repeats and realleges paragraphs 1 through 81 as if set forth fully hereinafter.

83. Defendants are using the name "Midas" and the symbols used by, and proprietary to, Midas in furtherance of their business without permission or authorization from Midas. The use in commerce by Defendants of the Midas trademarks and trade name outside the scope of the Franchise Agreement and without the consent of Midas is likely to confuse or deceive, and has confused or deceived, the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Midas.

84. Defendants' conduct has caused, is causing and will continue to cause irreparable injury to Midas unless restrained by this Court.

85. Midas has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
**Rhode Island Trademark Infringement**

86. Plaintiff repeats and realleges paragraphs 1 through 85 as if set forth fully hereinafter.

87. The use in commerce by Defendants of the Midas trademarks and trade name after the termination of the Franchise Agreement and without the consent of Midas is likely to confuse or deceive, and has confused or deceived, the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Midas. Such continued use of the Midas trademarks and trade name harms Midas' business reputation and infringes on Midas' exclusive rights in Midas' trademarks in violation of R.I. Gen. Laws § 6-2-12.

88. Defendants' acts were, and are being, done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

89. Defendants' conduct has caused, is causing and will continue to cause irreparable damage to Midas and its business reputation unless restrained by this Court.

90. Midas has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment as follows:

A) that Defendants, their agents, employees and any person acting in concert with them are permanently prohibited from using Midas' proprietary marks including the trademark "Midas" and all other tradenames, trademarks, service marks and trade dress associated with Midas or the Midas System, any and all signs and printed goods bearing the "Midas" trade name and Midas' proprietary marks, or otherwise suggesting an affiliation with Midas;

B) that Defendants are required to take such action as necessary to cancel any assumed name or equivalent registration previously established and/or filed by them which contains the name "Midas" or any other tradename, trademark or service mark of Midas and to assign the telephone number (401) 885-5115 and any other telephone number listed by Defendants in connection with their former Midas Franchise, listed for the Midas located at 5601 Post Road, East Greenwich, Rhode Island to Midas;

C) that Defendants are required to make arrangements to return to Midas any materials received by virtue of the Franchise Agreement with

Midas or provided for use in the operation of the Franchise, including all manuals, marketing materials, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings and any other material containing information regarding or relating to Midas' proprietary information, confidential information and/or trade secrets (as such terms are defined in the Franchise Agreement), operating instructions or business practices;

D) that Defendants, their agents, employees and any person acting in concert with them are prohibited from misappropriating, using, duplicating or disclosing any of Midas' proprietary information, confidential information and/or trade secrets (as such terms are defined in the Franchise Agreement);

E) provide Midas with reasonable opportunity to remove Midas' proprietary software from any and all of Defendants' computers, wherever such computers may be located;

F) contractual damages in an amount not less than $78,440.44;

G) statutory damages in an amount to be determined at trial;

H) liquidated damages in an amount not less than $4,200 and accruing at the rate of $100 per day until the discontinued use of any and all Midas trademarks by Defendants;

I) for costs and attorneys' fees as provided for in the Franchise Agreement and Sublease Agreement; and,

J) for such other relief as the Court deems just and appropriate.

Dated: December 2, 2005

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

Richard M. Gilbert
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
(617) 482-0600
Fax: (617) 482-0604

*Attorneys for Plaintiff*
*Midas International Corporation*

## VERIFICATION

I declare under penalty of perjury that the foregoing factual allegations in the complaint are true and correct.

Executed on November __, 2005

______________________________
JOHN E. WOOD, JR.
DISTRICT MANAGER
MIDAS INTERNATIONAL CORP.

361957_1.doc

**VERIFICATION**

I declare under penalty of perjury that the foregoing factual allegations in the complaint are true and correct.

Executed on November 30, 2005

District Manager

JOHN E. WOOD, JR.
DISTRICT MANAGER
MIDAS INTERNATIONAL CORP.

361957_1.doc