UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FILED
DEC 2 2005
DISTRICT COURT
DISTRICT OF RHODE ISLAND

MIDAS INTERNATIONAL CORPORATION
Plaintiff,

-vs-

ANTONELLI HOLDING COMPANY, CHRISTOPHER ANTONELLI AND CYNTHIA ANTONELLI,

Defendants.

C.A. No. 05- 504

**PLAINTIFF MIDAS INTERNATIONAL CORPORATION'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Midas International Corporation ("Midas") hereby moves pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction against Defendants Antonelli Holding Company, Christopher Antonelli and Cynthia Antonelli ("Defendants") barring Defendants from, among other things, operating, representing, or identifying themselves as a Midas authorized franchise or representing that they are affiliated in any with Midas after the valid termination of their Midas franchise. The grounds for this motion are set forth in the accompanying memorandum of law and the Verified Complaint and attached exhibits.

Dated: December 2, 2005

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

Richard M. Gilbert
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
(617) 482-0600
Fax: (617) 482-0604

*Attorneys for Plaintiff*
*Midas International Corporation*

**HEARING REQUESTED**

Pursuant to Local Rule 12(b), Midas hereby requests a hearing on its motion for preliminary injunction in order to address the basis of the motion and the injunctive relief requested. At this time, Midas believes that no more than one hour is necessary for the hearing.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2d day of December, 2005, a true copy of the above document was served by hand delivery/~~first-class U.S. mail, postage prepaid~~, on the following:

Antonelli Holding Company
5601 Post Road
East Greenwich, RI 02818

Christopher Antonelli
5601 Post Road
East Greenwich, RI 02818

Cynthia Antonelli
5601 Post Road
East Greenwich, RI 02818

362009_1.doc

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---

MIDAS INTERNATIONAL CORPORATION
Plaintiff,

-vs-

ANTONELLI HOLDING COMPANY, CHRISTOPHER ANTONELLI AND CYNTHIA ANTONELLI,

Defendants.

CA 05 504

C.A. No. 05-

---

**PLAINTIFF MIDAS INTERNATIONAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Midas International Corporation ("Midas") submits this memorandum of law in support of its motion for a preliminary injunction against Defendants Antonelli Holding Company, Christopher Antonelli and Cynthia Antonelli ("Defendants") barring Defendants from, among other things, operating, representing, or identifying themselves as a Midas authorized franchise or representing that they are affiliated in any with Midas after the valid termination of their Midas franchise.

In support of its motion, Midas incorporates herein by reference the factual allegations contained in the Verified Complaint ("Complaint") and attached exhibits.

## ARGUMENT

A district court properly may grant a preliminary injunction in a case alleging trademark infringement where it finds that the plaintiff has demonstrated that: (1) there is a likelihood of success on the merits; (2) the plaintiff risks suffering irreparable harm if the injunction is not granted; (3) the harm to the plaintiff if an injunction is not granted outweighs the harm that

injunctive relief would cause to the defendant; and (4) the public interest would not be adversely affected by granting the injunction. *Wine and Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005); *I.P. Lund Trading ApS and Kroin, Inc. v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998). Based on the facts in the Verified Complaint, the injunction against Defendants should be granted.

In nearly identical circumstances, the United States District Court for the Eastern District of New York entered preliminary injunctive relief in favor of Midas. *Midas International Corp. v. Kings Ridge Automotive Services, Inc.*, CV-02-4952 (CPS) (E.D.N.Y. Oct. 2, 2002) (Exhibit A); *Midas International Corp. v. MAG Automotive Enterprises, Inc.*, CV-04-2506 (ADS) (E.D.N.Y. June 30, 2004) (Exhibit B).

## I. DEFENDANTS' UNAUTHORIZED USE OF MIDAS' PROPRIETARY MARKS HAS CAUSED AND CONTINUES TO CAUSE IRREPARABLE HARM

Although an analysis of irreparable harm is required whenever this Court is asked to grant injunctive relief, that analysis is altered in a trademark infringement case, because "[i]n the trademark context, 'irreparable injury may be shown even in the absence of actual injury … based on plaintiff's demonstration of a likelihood of success on the merits...'" *I.P. Lund Trading*, 163 F.3d at 33 (quoting *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F. Supp. 994, 1013 (D. Mass. 1998)). *See also Camel Hair and Cashmere Institute of America, Inc. v. Assoc. Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir. 1986) ("There is considerable authority for the view that the irreparable injury requirement is satisfied once it is shown that the defendant is wrongfully trading on the plaintiff's reputation.").

The rationale for applying this standard of finding irreparable injury in trademark infringement cases was explained by Judge Friendly in *Omega Importing Corp. v. Pertri-Kine Camera Co., Inc.*, 451 F.2d 1190 (2nd Cir. 1971):

> While an injured plaintiff would be entitled to recover the profits on the infringing items, this often difficult to determine; moreover a defendant may have failed to earn profits because of the poor quality of its product or its own inefficiency. Indeed, confusion may cause purchasers to refrain from buying either product and to turn to those of other competitors. Yet to prove the loss of sales due to infringement is also notoriously difficult. Furthermore, if an infringer's product is of poor quality, or simply not worth the price, a lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.

*Id.* at 1195. Because Midas has demonstrated an overwhelming likelihood of success on the merits of its trademark infringement claim (as discussed below), and because the harm resulting from the unabated continuance of that infringement is not readily measurable, Midas has satisfied the irreparable element, and this Court should grant injunctive relief.

Even assuming that evidence of irreparable injury must be shown, such evidence is glaringly evident. Midas, like any trademark owner, has the right to license others to use its trademarks only in the manner that it prescribes. The unauthorized or unlicensed use of those marks creates a situation where Midas no longer can control the reputation and goodwill of its trademark. It is well established that lack of control amounts to irreparable injury warranting an injunction. *Societes Des Produits Nestle, S.A. v. Casa Helvetica, Inc.*, 982 F.2d 633, 643 (1st Cir. 1992) (observing that "courts have issued [Lanham Act] injunctions solely because of the trademark owner's inability to *control* the quality of goods bearing its name") (emphasis in original); *El Greco Leather Prods., Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986)

("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured under the holder's trademark."), *cert. denied,* 484 U.S. 817 (1987).

Accordingly, ample justification exists for a finding of irreparable injury to Midas.

## II. MIDAS IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A. Midas Has An Overwhelming Likelihood Of Success On Its Claims For Breach Of The Franchise Agreement and Breach Of Guaranty

Section 8.2(a) of the Franchise Agreement clearly states that if the "Franchisee fails to make any payment of money owed to Midas when due ... and such default is not cured within thirty days after Midas gives written notice of such default to Franchisee, then Midas may terminate this Agreement at any time thereafter by giving notice of such termination to Franchisee." It is so well established as to be axiomatic that failure to pay amounts due under a contract is a material breach because it "goes to the essence of the contract...." *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training and Placement Corp.*, 413 A.2d 85, 87 (R.I. 1980).[1] Based on these unequivocal terms and the underlying facts, it is clear that Midas terminated Defendants' franchise in full accordance with the terms and conditions of the Franchise Agreement following Defendants' uncured material breaches.

Section 8.7 of the Franchise Agreement likewise provides that, once a franchise has been terminated, the franchisee shall, among other things, "promptly . . . pay Midas all liquidated and ascertainable sums owing from Franchisee to Midas . . ." and "immediately and permanently discontinue the use of any of the Proprietary Marks, any of the Midas indicia, or any marks,

[1] Pursuant to the Franchise Agreement, Rhode Island law governs Plaintiff's state law claims. *See* Franchise Agreement at § 10.12.

names or indicia which in the opinion of Midas are confusingly similar thereto . . . ." "Where, as here, a contract is clear and unambiguous on its face, the role of the court is to enforce the contract as written." *Kelly v. Tillotson-Pearson, Inc.* 840 F. Supp. 935, 944 (D.R.I. 1994) (*citing Aetna Casualty & Sur. Co. v. Graziano,* 587 A.2d 916, 917 (R.I. 1991)). Thus, Defendants have also breached their Termination Obligations under the Franchise Agreement.

Accordingly, Midas has an overwhelming likelihood of success on its claim against Defendants for breach of the Franchise Agreement.

**B. Midas Is Likely to Succeed On Its Federal And Common Law Trademark Infringement And Unfair Competition Claims**

Because Midas has an overwhelming likelihood of success on its claim that it validly terminated the Franchise Agreement, it is also likely to succeed on its federal and common law trademark infringement claims. "The continued use of a trademark after breach of a franchise agreement is alone dispositive of the infringement issue." *Dunkin' Donuts Inc. v. GAV-STRA Donuts, Inc.*, 139 F. Supp. 2d 147, 158 (D. Mass. 2001) (*citing S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3rd Cir. 1992)). *See also Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1002 (S.D. Fla. 1992) (noting the "well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement"); McCarthy, 4 *McCarthy Trademarks and Unfair Competition* §25.31 ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks.")

Even without relying upon termination as the basis for its claims, Midas' likelihood of success on federal and common law trademark infringement claims is clear. "The purpose of federal trademark law is to prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or services." *STAR Financial Services, Inc. v.*

*AASTAR Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir. 1996). Confusion as to source exists when a buyer is likely to purchase one product in the belief that he or she is buying another. *Id.* To prevail on a trademark infringement claim, a plaintiff must establish (1) that it is the owner of a valid mark, (2) that the defendant is using the same or similar mark, and (3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff. *Id.* This standard is materially the same for a common law trademark claim and a claim asserting unfair competition under state law. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,* 376 F.3d 8, 14 (1st Cir. 2004) (noting that "same likelihood of confusion requirement applies to … claims under Rhode Island common law for unfair competition and service mark infringement"); *Schroeder v. Lotito,* 577 F. Supp. 708, 724 (D.R.I. 1983) ("the vending of products 'readily susceptible … to customer confusion or deception' constitutes unfair competition under [Rhode Island] state law") (*quoting Bostitch, Inc. v. King Fastener Co.*, 140 A.2d 274, 282 (R.I. 1958)).

The First Circuit has adopted an eight factor test to determine the likelihood of confusion. *I.P. Lund Trading*, 163 F.3d at 43. Due to Defendants' status as a holdover franchisee, however, there can be no debate regarding the likelihood of confusion and therefore no need to employ the eight factor test. Nevertheless, application of the eight factor test serves to demonstrate further the likelihood of confusion. Specifically, the eight factor test and its application to the case at bar is as follows: (1) the similarity of the marks – the marks are identical; (2) the similarity of the goods – the goods are identical because Defendants continue to operate their shop as if they were a *bona fide* franchisee of Midas; (3) the relationship between the parties' channels of trade – the channels of trade are identical; (4) the relationship between the parties' advertising – methods of advertising are materially the same; (5) the classes of prospective purchasers – Midas products and services are sold to retail customers at least some of whom are likely to be confused by

Defendants holding themselves out as a Midas shop; (6) evidence of actual confusion – highly likely to occur; (7) the defendants' intent in adopting plaintiff's mark – there can be no doubt that Defendants have adopted and are using Midas' marks to induce customers into believing that they are dealing with an authorized Midas franchisee; and (8) the strength of the plaintiff's mark – the substantial nationwide advertising by Midas, coupled with the arbitrary choice of the word Midas to denote automotive parts sales and service, clearly establishes that Midas' mark is extremely strong.

In sum, Defendants are continuing to use the exact same marks as when they were a licensed Midas franchisee for the purpose of carrying on precisely the same type of business, in the same geographic area, serving the same customers. "There is a great likelihood of confusion when an infringer uses the exact trademark as its former franchisor." *Autohaus, Inc. v. BMW of North America, Inc.*, 1993 WL 1503945 (D. Mass., Dec. 23, 1993) (*quoting S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3rd Cir. 1992)). Accordingly, the likelihood of confusion is inescapable and the Court must find that Midas is likely to succeed on the merits of its federal and common law trademark infringement claims and its state unfair competition claim.

**C. <u>Midas Is Likely To Succeed On Its Trade Dress Claims</u>**

To establish entitlement to trade dress protection, Midas must show that its trade dress is: (1) used in commerce; (2) non-functional; and (3) distinctive. *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, 259 F.3d 25, 38 (1st Cir. 2001). The first two of these elements are beyond dispute. As to third element, "[d]istinctiveness may be either 'inherent,' that is, the 'intrinsic nature [of the trade dress] serves to identify a particular source,' or 'acquired', i.e., the trade dress has acquired a 'secondary meaning' whereby the public views its 'primary significance … as identify[ing] the source of the product rather than the product itself.'" *Id.*

(citations omitted). The trade dress at issue here – the signage, lettering style, exterior appearance such as the oval sign with "Midas" in distinctive lettering, floor plans and décor –is inherently distinctive to Midas and adopted for the purpose of identification and individuality.

To recover for trade dress infringement, Midas must demonstrate, in addition to having a protectable trade dress, that the defendants' use of similar trade dress is likely to cause consumer confusion. *Yankee Candle Co.*, 259 F.3d 38. The same analysis which compels the conclusion that there is a likelihood of confusion as to Midas' trademark likewise establishes a likelihood of confusion as to its trade dress. Accordingly, Midas has demonstrated a likelihood of success on the merits of its trade dress infringement claim.

### D. Midas Is Likely To Succeed On Its State Trademark Claim

R.I. Gen. Laws § 6-2-12 creates a right to injunctive relief where a defendant's conduct creates a "[l]ikelihood of injury to business reputation . . . [of] . . . a mark valid at common law ... notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." For the reasons discussed in Part B above concerning its federal trademark infringement claims, Midas has a clear likelihood of success on its state claim.

## III. THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY IN MIDAS' FAVOR

The harm to Midas from Defendants' unlicensed use of its marks outweighs any harm Defendants may suffer from the grant of the requested injunction. "Given the significant resources spent by [Midas] in developing and advertising its service and the relatively minor investment of the Defendants, this factor favors interlocutory relief…." *Northern Light Techonology, Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 121 (D. Mass. 2000), *aff'd* 236 F.3d 57 (1st Cir.), *cert. denied*, 533 U.S. 911 (2001). *See also Tanel Corp. v. Reebok Int'l, Ltd.*,

774 F. Supp. 49, 51 (D. Mass. 1990) (holding that plaintiff's expenditures on four years' worth of advertising and promotion outweighed harm to infringers). Moreover, Defendants, as unauthorized users of Midas' marks and proprietary indicia, have no equitable standing to complain of injury. *See, e.g., American Home Prods. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 107 (2d Cir. 1978) ("One who adopts the mark of another for similar goods acts at his own peril...."), *S&R Corp.,* 968 F.2d at 379 (franchisee who ceased paying royalties "brought much of the difficulties of which he complains upon himself."). Clearly, the balance of harms weighs decisively in Midas' favor.

## IV. AN INJUNCTION WOULD SERVE THE PUBLIC INTEREST

While the public interest is often defined in different ways, in a trademark case it is most often synonymous with the right of the public not to be deceived or confused. *See, e.g., Calamari Fisheries v. The Village Catch, Inc.*, 698 F. Supp. 994, 1015 (D. Mass. 1988) ("preventing consumer confusion is clearly in the public interest."). As the First Circuit has observed, once a plaintiff has demonstrated irreparable harm, "given the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names, it [is] reasonable to conclude the public interest [will be] served] by an order" granting injunctive relief against an infringer. *Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697, 700 (1st Cir. 1987).

In addition to the public at large, those Midas franchisees that abide by their own franchise agreements have an interest in preventing unlicensed individuals from operating under Midas' marks. Inferior products and services being passed off under Midas' marks adversely affect all franchisees, particularly those in the same market. Defendants' unlicensed operations

also will divert business in their trading areas away from Midas' licensed franchisees, thereby causing them to lose sales to which they are entitled. Licensed franchisees have placed their trust in the franchisor to protect their substantial investment in the system.

## CONCLUSION

For all the foregoing reasons, Midas respectfully requests that its Motion for a Preliminary Injunction be granted.

Dated: December 2, 2005

Respectfully submitted,

David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

Richard M. Gilbert
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
(617) 482-0600
Fax: (617) 482-0604

*Attorneys for Plaintiff*
*Midas International Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2d day of December, 2005, a true copy of the above document was served by hand delivery/~~first-class U.S. mail, postage prepaid~~, on the following:

Antonelli Holding Company
5601 Post Road
East Greenwich, RI 02818

Christopher Antonelli
5601 Post Road
East Greenwich, RI 02818

Cynthia Antonelli
5601 Post Road
East Greenwich, RI 02818

________________________

360711_2.doc